IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| FRANCES M. PUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CV-117 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits. For the reasons provided herein, defendant's motion for summary judgment [doc. 9] will be denied, and plaintiff's motion for judgment [doc. 7] will be granted to the extent it seeks remand under sentence four of § 405(g).[1]

I.

*Procedural History*

Plaintiff applied for benefits in September 2004, claiming to be disabled by carpal tunnel syndrome, back pain, anxiety, depression, Cushing's disease, and "difficulty

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

breathing." [Tr. 70, 86]. She alleged a disability onset date of August 1, 2004. [Tr. 70].[2]

The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in February 2007.

In March 2007, the ALJ issued a decision denying benefits. Therein, he found that plaintiff suffers from "mild degenerative disc disease, chronic obstructive pulmonary disease [COPD], mild median neuropathies in the upper extremities, and obesity," which are "severe" impairments but not equivalent, singularly or in concert, to any impairment listed by the Commissioner. [Tr. 14-15]. The ALJ concluded, based on vocational expert testimony and a consultative physical examination that he purportedly "incorporated" and "afforded considerable weight," that plaintiff retains the residual functional capacity to engage in a significant number of unskilled light jobs existing in the state and national economies. [Tr. 14-18]. Plaintiff was accordingly deemed ineligible for benefits.

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on February 12, 2008. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

---

[2] Plaintiff's insured status expired December 31, 2005 [Tr. 67], and she must prove the onset of disability on or before that date. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

II.

*Background and Relevant Medical Evidence*

Plaintiff was born in 1956 and has a high school diploma. [Tr. 70, 236]. She has previously worked as a waitress and as a newspaper deliverer. [Tr. 95].

Plaintiff is 5'3" tall and weighs up to 262 pounds. [Tr. 259, 317]. Multiple medical sources have instructed her to exercise and lose weight. [Tr. 192, 194, 294, 314]. For example, treating physician Bhavna Vora wrote in February 2005, "Obesity. Diet and exercise counseling was done for 15 minutes face to face." [Tr. 287]. Unfortunately, the administrative record reveals only passing attempts at dietary compliance and weight loss. [Tr. 292, 296].

Although she alleges "major coughing attacks" so severe that they "throw[] her back out" [Tr. 100, 107], plaintiff has smoked up to two packs of cigarettes per day for between thirty and forty years. [Tr. 182, 231, 258, 287, 319, 326, 402].[3] Plaintiff has told the Commissioner that she is disabled in part due to breathing difficulties triggered by *smoke* and certain odors. [Tr. 107, 149]. She testified that her primarily disabling conditions are, "My breathing and coughing and then not being able to stand." [Tr. 505]. Plaintiff claims that she does not drive alone because she is "afraid of breathing attack[s]" [Tr. 142, 150] and she alleges that she must rest after walking 150 feet "[d]ue to shortness of breath." [Tr. 144].

---

[3] August 2005 emergency room records also reference plaintiff's contemporaneous marijuana consumption. [Tr. 491].

3

In response to her complaints of respiratory impairment, numerous medical sources have instructed plaintiff to stop smoking. [Tr. 186, 191-92, 194, 289, 292, 296, 309, 327, 404]. For example, treating physician Vora has "motivated her [sic] to quit smoking, as that will be most beneficial for her COPD" [Tr. 328], and Dr. Arnel Panelo "repeatedly advised her to quit smoking" when he discharged her from a June 2005 hospitalization secondary to complaints of chest heaviness and coughing-induced pain. [Tr. 401].[4]

Plaintiff alleges "debilitating . . . almost constant . . . extreme" back pain brought on by "[c]oughing or sneezing or bending wrong." [Tr. 147]. Plaintiff's "deep coughing" allegedly "can pull [her] back out." [Tr. 149]. She has complained to physicians of "back pain associated with her cough." [Tr. 328, 364]. Plaintiff purportedly cannot walk upright or for long distances because of back pain. [Tr. 142, 257]. She claims that she does not "know how much longer I'll be able to walk." [Tr. 145].

March 2005 lumbar imaging showed only mild degenerative changes and no acute abnormalities. [Tr. 333]. A lumbar MRI the following month revealed "[p]rominent disc bulging at T12-L1" without definite impingement on the terminal end of the spinal cord. [Tr. 331]. May 2005 lumbar x-rays again showed "degenerative changes at the thoracolumbar junction" but "with no acute abnormality." [Tr. 372].

---

[4] On December 17, 2003, plaintiff told Dr. Ronald Cherry that she had stopped smoking. [Tr. 194]. By January 2, 2004, plaintiff was again smoking. [Tr. 330]. At her February 2007 administrative hearing, plaintiff testified that she stopped smoking the previous month. [Tr. 505]. Given the credibility concerns rampant in the instant record, the accuracy of that testimony is uncertain. Moreover, the testimony is irrelevant as this appeal involves solely the period prior to December 31, 2005 - plaintiff's date last insured. [Tr. 67].

4

Two months after the alleged disability onset date, Dr. Vora wrote that plaintiff's back pain is "well controlled" with medication. [Tr. 296]. Similarly, in January 2005, Dr. Vora wrote, "Her activity level is good. Her pain is well controlled almost every day." [Tr. 289]. In March 2005, Dr. Vora wrote that "her pain is extremely well controlled." [Tr. 281]. Dr. Vora has opined that the back pain complaints are "due to her weight and degenerative joint disease." [Tr. 319]. More than once, Dr. Vora has "explained" to plaintiff the relationship between her obesity and her back pain, and has told her that "[w]eight reduction is most essential." [Tr. 296, 314].

Dr. Joseph Johnson performed a consultative physical examination in March 2005. Lungs were clear with good airflow and no rales or wheezes. [Tr. 259]. Dr. Johnson wrote that plaintiff became "mildly short of breath with exertion." [Tr. 260]. She "look[ed] uncomfortable" and was "slow to extend back from a flex position due to low back pain. [Tr. 259-60]. Dr Johnson opined that plaintiff "should be able to sit for five hours during an eight-hour day, stand or walk for two hours during an eight-hour day, not routinely lift and occasionally lift up to 20 pounds." [Tr. 260].[5]

Plaintiff alleges that she wears braces on her hands due to carpal tunnel syndrome. [Tr. 110]. However, Dr. Johnson observed full bilateral grip strength. [Tr. 259]. Dr. Vora diagnosed carpal tunnel syndrome in July 2004 based on plaintiff's self-reporting, and testing was ordered. [Tr. 303]. An EMG and nerve conduction study was consistent

---

[5] Nonexamining Dr. Reeta Misra subsequently completed a Physical RFC Assessment, opining that plaintiff can work at the higher medium level of exertion. [Tr. 270-74]

5

with "mild median nerve compromise" at each wrist. [Tr. 338]. Dr. Vora interpreted the testing as indicative of "mild carpal tunnel syndrome." [Tr. 301].

Psychologist Tracey Allred performed a mental status examination in January 2005. Dr. Allred predicted moderate limitations in concentration, persistence, adaptation, and stress tolerance. [Tr. 239].

III.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application

6

for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

IV.

*Analysis*

A. Remand

Dr. Johnson is the only examining source to have offered an opinion as to plaintiff's physical capabilities. As discussed above, Dr. Johnson predicted that plaintiff cannot collectively sit, stand, and walk for sufficient time to complete a traditional eight-hour workday, and that she "should . . . not routinely lift." [Tr. 260]. Plaintiff argues that the ALJ erred in not fully adopting that assessment. The court must agree that the ALJ's handling of Dr. Johnson's report does not survive substantial evidence review.

In addressing plaintiff's RFC, the ALJ wrote,

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally or 10 pounds *frequently* and sit for about *6* hours out of an 8 hour day. The claimant cannot stand or walk more than 2 hours *each* out of an 8 hour day and cannot perform more than frequent climbing, stooping, bending from the waist to the floor, crouching, or crawling and cannot be exposed to environmental pollutants such as dust, fumes, or noxious gases.

[Tr. 15] (emphasis added). In addressing Dr. Johnson's assessment, the ALJ wrote,

> Dr. J. Johnson consultatively examined the claimant in March 2005. . . . This is the only specific physical functional assessment of the claimant from a treating or examining source in the record *and is afforded considerable weight*.

8

> . . .
>
> . . . The functional assessment of Dr. Johnson, the consultative examiner, is the only physical functional assessment of the claimant in the record. It more than accommodates the claimant's complaints of pain and shortness of breath by limiting her to less than a full range of light exertion activity. *Accordingly, it has been incorporated into the residual functional capacity outlined above*
> . . . .

[Tr. 14, 17] (emphasis added).

Plaintiff correctly points out that although the ALJ purports to have "incorporated" and "afforded considerable weight" to Dr. Johnson's assessment, in fact he did not. There exist significant and unexplained inconsistencies between the ALJ's RFC and Dr. Johnson's opinion that plaintiff "should be able to sit for five hours during an eight-hour day, stand or walk for two hours during an eight-hour day, not routinely lift and occasionally lift up to 20 pounds." [Tr. 260].

First, Dr. Johnson opined that plaintiff cannot frequently lift, but the ALJ deemed her capable of lifting up to ten pounds frequently. More importantly, Dr. Johnson's opinion, as it is vaguely written, predicts that plaintiff cannot work an eight-hour day. He opined that plaintiff can only sit for five hours, and stand or walk for another two hours. Dr. Johnson did not, as the ALJ wrote, opine that plaintiff can stand or walk for two hours *each*. If plaintiff cannot complete an eight-hour work day, then she cannot meet the demands of light employment, which must be full-time forty-hour work.[6]

---

[6] The court recognizes Sixth Circuit authority holding that a claimant "need not be found capable of full-time work to be found capable of working." *See Conn v. Sec'y of Health & Human*
(continued...)

9

These discrepancies, while seemingly minor, in the present case represent the difference between being able or unable to perform full-time work. The Commissioner attempts to reconcile the "stand or walk" discrepancy to this court, but his briefing on the issue is nonsensical and in fact furthers plaintiff's case.

> Contrary to Plaintiff's contention, it was reasonable for the ALJ to interpret Dr. Johnson's opinion in the manner in which he did. If Dr. Johnson had instead said that Plaintiff could stand **or** walk for two hours during an eight-hour day, such would have appeared to be more restrictive. However, by opining that she could stand **and** walk for two hours in an eight-hour day, he seems to suggest that she could perform either standing or walking for two hours each.

[Doc. 10. p. 14] (emphasis in original). Obviously, the Commissioner's briefing reverses the language used by Dr. Johnson, who in fact did employ the word "or," which the Commissioner acknowledges is the more restrictive term.

The hypothetical questions presented to the vocational expert at the administrative hearing only add to the confusion. The ALJ first presented a hypothetical claimant with *no* restrictions in sitting, standing, or walking [Tr. 514], and then modified the question to "limited to no more than two hours out of an eight-hour day standing and walking . . . ." [Tr. 515]. While the subsequent language is consistent with Dr. Johnson's assessment in terms of standing and walking, it leaves out the prediction that plaintiff can sit for no more

---

[6](...continued)
*Servs.*, 51 F.3d 607, 610 (6th Cir. 1995); *But see, e.g., Kelley v. Apfel*, 185 F.3d 1211, 1215 n.4 (11th Cir. 1999) (questioning *Conn*). However, post-*Conn*, the Commissioner has clarified that the ability to perform full-time work is required at step five. *See, e.g.*, SSR 96-8p, 1996 WL 374184 (July 12, 1996).

10

Case 3:08-cv-00117-RLJ-CCS   Document 11   Filed 05/14/09   Page 10 of 14   PageID #: 58

than five hours. Again, the eight-hour issue was not adequately addressed. Vocational expert testimony can constitute substantial evidence only if the question posed to that expert by the ALJ accurately reflect's the claimant's limitations. *See Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987).

The court wishes to stress that this memorandum should not be read as requiring a blanket adoption of Dr. Johnson's assessment. The inconsistencies, lifestyle issues, credibility concerns, and objective evidence cited throughout this opinion would, in the court's view, likely provide ample substantial evidentiary support for the full or partial rejection of Dr. Johnson's views. The Commissioner can reject a medical source opinion if a valid basis is articulated for doing so.

Because the court concludes that a valid basis was not articulated in this case, remand is required. The ALJ's rationale does not explain the inconsistencies between his conclusions and Dr. Johnson's, and thus there is not substantial evidence to satisfy the Commissioner's step five burden of proof. This matter will be remanded to the Commissioner for further evaluation of plaintiff's claim. Unfortunately, another administrative hearing will likely be required to cure the infirmities in the previous vocational expert testimony, and that administrative hearing and all subsequent adjudication shall be conducted by a different ALJ.

On remand, the hypothetical questioning presented to the vocational expert should accurately reflect all of plaintiff's credible limitations between her alleged onset date

11

and her date last insured. In particular, the Commissioner must either fully adopt the opinions of Dr. Johnson and consulting psychologist Allred, or he must articulate valid reasons for not doing so.[7]

### B. Reversal

To the extent that plaintiff asks this court to award benefits rather than remanding her case, that request must be denied. A reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*.

The present record does not meet the standard set forth in *Faucher*. As observed by the ALJ, plaintiff's subjective complaints appear unreliable and overstated. The objective evidence pertaining to her lungs and spine do not support the extraordinary degree of limitation alleged, and Dr. Vora has repeatedly written that plaintiff's pain is well-controlled.

Plaintiff also claims to be disabled in part by carpal tunnel syndrome, but Dr. Vora found her to suffer from that condition only to a mild degree. Although plaintiff claims

---

[7] The ALJ's RFC discussion did not incorporate the "moderate" limitations predicted by Dr. Allred, nor did it explain the reason for their omission. [Tr. 15-17]. Elsewhere, the ALJ discussed the mental health treatment history of a *male*, so the extent to which *plaintiff's* mental status was carefully considered is unclear. [Tr. 15].

12

to be disabled in part by insomnia, she has admitted to sleeping at least seven hours in a normal day. [Tr. 258]. In addition, Dr. Vora's office notes of October 19, 2004, are illuminating as to this purportedly disabling condition:

> She has been drinking about 7 to 8 Cokes a day. Explained to her about [sic] caffeine cessation is very important for better sleep. In fact, the patient wakes up in the night multiple times when she drinks Coke. Explained to her that her insomnia would never get better if her caffeine intake is not cut down.

[Tr. 294].

In addition, as correctly noted by the ALJ [Tr. 13], plaintiff's earnings statements show no reported income in the years 2003-2005 [Tr. 66, 68] but she told the Commissioner and Dr. Allred that she worked as a newspaper deliverer through at least January 2005. [Tr. 172, 236]. This discrepancy calls into question the veracity of all of plaintiff's subjective reporting.

Further, plaintiff's style of life is completely inconsistent with that of a person who suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). A reasonable adjudicator could easily conclude that plaintiff does not suffer the degree of back pain and respiratory difficulty claimed, as it is inconceivable that someone in the dire condition alleged by plaintiff would make virtually no effort to remedy the issues that likely cause those problems.

Dr. Vora and others have explained the relationship between plaintiff's obesity and her back pain, and they have also explained the relationship between her smoking and her respiratory difficulties. Plaintiff herself acknowledges the connection between her

13

coughing and her back pain. If these conditions were in fact as bad as alleged, it is reasonable to think that plaintiff would have taken meaningful strides to participate in her own health care by attempting to better those conditions.[8]

The court is therefore not satisfied that "all essential factual issues have been resolved [or that] the record adequately establishes [] plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. Benefits will not be awarded by this reviewing court.

### C. Conclusion

This matter will be remanded to the Commissioner for a more careful evaluation of plaintiff's claim in light of the issues raised herein and consistent with *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847 (6th Cir. 1986). An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan      
United States District Judge

---

[8] The court stresses that this observation is not relevant merely to plaintiff's failure to *lose* weight. *See, e.g., Harris v. Heckler*, 756 F.2d 431, 435-36 n.2 (6th Cir. 1985) ("The [Commissioner] is certainly not entitled to presumptions that obesity is remediable or that an individual's failure to lose weight is 'wilful'. The notion that all fat people are self-indulgent souls who eat more than anyone ought appears to be no more than the baseless prejudice of the intolerant svelte.") (citation omitted). Instead, the court expresses its astonishment with plaintiff's apparent failure to ever meaningfully *attempt* to adhere to a proper diet, lose weight, or exercise, despite her physicians' instructions.